Morgan E. Pietz (SBN 260629)
　morgan@pstrials.com
Thomas P. Burke Jr. (SBN 288261)
　tom@pstrials.com
Pietz & Shahriari, LLP
6700 S. Centinela Avenue, 2nd Floor
Culver City, CA 90230
Telephone:　(310) 424-5557
Facsimile:　(310) 597-4626

*Attorneys for Defendant HARD CARRY GAMING INC. d/b/a NRG ESPORTS*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOUNDRY IV INC., a Nevada corporation,<br><br>　　Plaintiffs,<br><br>v.<br><br>HARD CARRY GAMING INC., d/b/a NRG ESPORTS, a Delaware corporation; CAESARS ENTERTAINMENT, INC., a Delaware corporation, and DOES 1 through 10,<br><br>　　Defendants. | Case No. 2:23-cv-02690 MWF (MARx)<br><br>Assigned for All Purposes to the Honorable Michael W. Fitzgerald<br><br>**DEFENDANT HARD CARRY GAMING d/b/a NRG ESPORTS' SPECIAL MOTION TO STRIKE THE FIRST AMENDED COMPLAINT OF PLAINTIFF FOUNDRY IV, INC. PURSUANT TO CAL. CIV. PROC. CODE § 425.16 (ANTI-SLAPP)**<br><br>Hearing Date: November 27, 2023<br>Time: 10:00 a.m.<br>Courtroom: 5A<br><br>Action Filed: April 10, 2023 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 27, 2023 at 10:00 a.m. or as soon thereafter as may be heard by the above-entitled Court, located at the First Street Courthouse, 350 West First Street, Courtroom 5A, Los Angeles, California 90012, before the Honorable Michael W. Fitzgerald, Defendant Hard Carry Gaming, Inc. d/b/a NRG Esports will and hereby does move the Court to strike the First Amended Complaint of Plaintiff Foundry IV, Inc. pursuant to California Code of Civil Procedure section 425.16 and Federal Rule of Civil Procedure 12(f).

This motion is based on the accompanying Memorandum of Points and Authorities, the Declarations of Brett Lautenbach, Jaime Cohenca, and Thomas P. Burke Jr., all pleadings and papers on file, and upon such other matters as may be presented to the Court at the time of the hearing.

This motion is made following a conference of counsel pursuant to Local Rule 7-3 that took place on October 2, 2023. Burke Decl., ¶ 6.

Respectfully submitted,

DATED: October 9, 2023         PIETZ & SHAHRIARI, LLP

By */s/ Thomas P. Burke Jr.*
Morgan E. Pietz
Thomas P. Burke Jr.
Attorneys for Defendant
HARD CARRY GAMING INC.
d/b/a NRG ESPORTS

Case 2:23-cv-02690-KK-MAR   Document 33   Filed 10/09/23   Page 3 of 17   Page ID #:237

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 6

II. FACTUAL BACKGROUND................................................................................... 6

III. ARGUMENT............................................................................................................. 8

    A. Prong One: FIV's lawsuit arises from protected activity................................. 8

        1. The anti-SLAPP law subjects causes of action arising from acts in furtherance of the right of free speech in connection with a public issue to being stricken. ................................................................................... 8

        2. The *Into the Spider-Verse* livestream was an act in furtherance of the right of free speech that took place in a public forum. ........................... 9

        3. The *Into the Spider-Verse* livestream was connected with a public issue—i.e., the home media release of that popular and successful film. ................................................................................................................ 10

        4. The livestream is the only allegedly wrongful and injury-producing conduct mentioned in FIV's complaint. ............................................... 12

        5. The commercial speech exemption to the anti-SLAPP statute does not apply here since the livestream was an advertisement or promotion of a motion picture. ................................................................................... 13

    B. Prong Two: FIV cannot demonstrate a probability of prevailing on either of its causes of action............................................................................................ 13

        1. FIV cannot demonstrate a probability of prevailing on its common law trademark infringement claim because it will not be able to prove that it used "Suite Series" as a trademark before NRG. .............................. 14

        2. FIV cannot demonstrate a probability of prevailing on its unfair competition claim for multiple independent reasons.......................... 15

    C. NRG must be awarded its fees and costs if it prevails on this motion........... 16

IV. CONCLUSION....................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Damon v. Ocean Hills Journalism Club*,
   85 Cal. App. 4th 468 (2000) .................................................................................... 10

*Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*,
   448 F.3d 1118 (9th Cir. 2006) .................................................................................. 14

*Dowling v. Zimmerman*,
   85 Cal. App. 4th 1400 (2001) .................................................................................. 16

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal. 5th 133 (2019) ............................................................................................... 11

*Grupo Gigante S.A. de C.V. v. Dallo & Co.*,
   391 F.3d 1088 (9th Cir. 2004) .................................................................................. 14

*Hall v. Time Warner, Inc.*,
   153 Cal. App. 4th 1337 (2007) ................................................................................ 10

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) .................................................................................... 10

*Ingels v. Westwood One Broad. Servs.*,
   129 Cal. App. 4th 1050 (2005) ................................................................................ 12

*Jarrow Formulas, Inc. v. LaMarche*,
   31 Cal. 4th 728 (2003) ............................................................................................. 14

*Knight v. Montgomery Cnty., Tennessee*,
   470 F. Supp. 3d 760 (M.D. Tenn. 2020) ................................................................... 9

*Lab Zero, Inc. v. Cartwright*,
   2023 WL 2767921 (Cal. Ct. App. Apr. 4, 2023) ...................................................... 11

*Lacoste v. Keem*,
   2020 WL 5239110 (C.D. Cal. June 23, 2020) .......................................................... 10

*Marketquest Grp., Inc. v. BIC Corp.*,
   316 F. Supp. 3d 1234 (S.D. Cal. 2018) .................................................................... 15

*Nygard, Inc. v. Uusi-Kerttula*,
   159 Cal. App. 4th 1027 (2008) ................................................................................ 10

*Rand Res., LLC v. City of Carson*,
   247 Cal. App. 4th 1080 (2016) ................................................................................ 12

*Seelig v. Infinity Broad. Corp.*,
   97 Cal. App. 4th 798 (2002) .................................................................................... 10

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
 96 F.3d 1217 (9th Cir. 1996) ............................................................................. 14

*Tamkin v. CBS Broadcasting, Inc.*,
 193 Cal. App. 4th 133 (2011) ............................................................................. 8

*Tuchscher Dev. Enterprises, Inc. v. San Diego Unified Port Dist.*,
 106 Cal. App. 4th 1219 (2003) ........................................................................... 14

*Varian Medical Systems v. Delfino*,
 35 Cal. 4th 180 (2005) ........................................................................................ 8

*Wilbanks v. Wolk*,
 121 Cal. App. 4th 883 (2004) ............................................................................. 10

*Wong v. Tai Jing*,
 189 Cal. App. 4th 1354 (2010) ........................................................................... 10

**Statutes**

15 U.S.C. § 1127 ......................................................................................................... 15

Cal. Civ. Proc. Code § 425.16 ........................................................................ 8, 9, 13, 16

Cal. Civ. Proc. Code § 425.17 ................................................................................. 13

Defendant Hard Carry Gaming d/b/a NRG Esports ("NRG") submits this memorandum in support of its special motion to strike, pursuant to California Code of Civil Procedure section 425.16, Plaintiff Foundry IV, Inc.'s First Amended Complaint (Dkt. No. 20) ("FAC").

## I. INTRODUCTION

Plaintiff Foundry IV, Inc. ("Plaintiff" or "FIV")'s entire first amended complaint arises from one expressive act—a twelve-hour livestream that took place on March 16, 2019 and featured one of NRG's Esports athletes, known professionally as Dizzy. The livestream was an act in furtherance of the right of free speech about a public issue—specifically, Dizzy and the other Esports athletes provided running commentary on their gameplay and the entire livestream was a promotion for the home media release of the wildly popular and successful animated film, *Spider-Man: Into the Spider-Verse*. Accordingly, FIV's complaint satisfies prong one of California's anti-SLAPP statute, meaning the entire complaint is subject to being stricken unless FIV can show by admissible evidence that it has a probability of prevailing on its claims. FIV will be unable to do so, for the reasons detailed below and in Defendant Caesars Entertainment, Inc.'s motion to dismiss. *See* Dkt. No. 32-1. Therefore, FIV's complaint should be stricken in its entirety and NRG should be awarded its costs and fees incurred in connection with this motion.

## II. FACTUAL BACKGROUND

FIV alleges in its complaint that at some unspecified time—though presumably before Fall 2016—Tobias Sherman, one of the founders of FIV, created "an idea for a television series called 'Suite Series.'" FAC, ¶¶ 11–12. "The concept was to have an Esports athlete and a celebrity team up against other Esports athlete and celebrity teams in a video game 'battle royale.' Each team would compete from a different suite in a casino hotel …." *Id.* According to FIV, "the 'Suite Series' name was believed by all to be a very clever, catchy, and descriptive title …." *Id.*, ¶ 14. The first public mention of the name "Suite Series" occurred on July 9, 2018 in a press release from FIV announcing its

partnership with MGM Resorts International. *Id.*

FIV does not appear to have made any further announcements or used the "Suite Series" name in public at any point over the following eight months. *See* FAC, ¶¶ 14–20. The next public mention of "Suite Series"—according to FIV—was in a tweet by NRG on March 9, 2019 announcing a livestream event scheduled for March 16, 2019 in association with Defendant Caesars Entertainment, Inc. *Id.*, ¶ 20. FIV further alleged that it "began receiving calls from people" about the "Suite Series" livestream after the NRG tweet. *Id.*, ¶¶ 20–21.

That livestream did in fact take place on March 16, 2019. *See* Declaration of Jaime Cohenca ("Cohenca Decl."), ¶ 3. The twelve-hour streaming event was sponsored by Sony Pictures Home Entertainment to promote the home media release of the film *Spider-Man: Into the Spider-Verse*.[1] *Id.*, ¶ 4; Burke Decl., Ex. 3. The livestream was viewed over 454,000 times and the combined total watch time for all viewers was 267,579 hours. *See* Burke Decl., Ex. 3. The average number of concurrent viewers was over 20,000 and the maximum was over 41,000. *Id.* Dizzy—the Esports athlete featured in the stream—posted an eight-minute recap of the stream on his YouTube channel on April 1, 2019.[2] *Id.*, Ex. 1. The recap video has been viewed over 371,000 times, gotten 8,100 likes, and generated 721 comments. *Id.* Everything that appeared in the recap video also appeared in the twelve-hour stream that took place on March 16, 2019. Cohenca Decl., ¶ 11.

This livestream is the only allegedly wrongful or injury producing conduct alleged in FIV's operative complaint. *See* FAC, ¶ 23 ("The NRG/Caesars version of Suite Series had a devastating effect on FIV.").

///

///

---

[1] *See* Declaration of Thomas P. Burke Jr. ("Burke Decl."), Ex. 2, which shows that *Into the Spider-Verse* grossed $190,241,310 domestically and $375,582,637 worldwide during its original theatrical release.
[2] *Available at* https://www.youtube.com/watch?v=WwyPESjbkC8, last accessed October 9, 2023.

## III. ARGUMENT

### A. Prong One: FIV's lawsuit arises from protected activity.

Under the familiar, two-prong anti-SLAPP analysis, on the first prong, "the party bringing the anti-SLAPP motion has the initial burden of showing that the lawsuit, or a cause of action in the lawsuit, arises from an act in furtherance of the right of free speech or petition," then, once "the defendant has met its burden," on the second prong, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the lawsuit or on the cause of action." *Tamkin v. CBS Broadcasting, Inc.*, 193 Cal. App. 4th 133, 142 (2011) (citations omitted).

#### 1. The anti-SLAPP law subjects causes of action arising from acts in furtherance of the right of free speech in connection with a public issue to being stricken.

FIV's entire complaint is subject to being stricken under California's anti-SLAPP statute, section 425.16 of the Code of Civil Procedure. "The Legislature enacted section 425.16 to prevent and deter 'lawsuits ... brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" *Varian Medical Systems v. Delfino*, 35 Cal. 4th 180, 192 (2005) (quoting Cal. Civ. Proc. Code § 425.16(a)).

Section 425.16(b)(1) and (2) provide as follows: "(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim" and "(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Further, "[a]s used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: … (3) any written or oral statement or writing made in a place open to the public or a public forum in

connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16 (e)(3) and (4). The anti-SLAPP statute is unique among California laws in that the Legislature specifically commanded that it "shall be construed broadly." *Id.*, § 425.16(a).

> **2. The *Into the Spider-Verse* livestream was an act in furtherance of the right of free speech that took place in a public forum.**

FIV's lawsuit arises from such activity in furtherance of NRG's right of free speech in connection with a public issue: namely, the promotion of the home media release of *Into the Spider-Verse*, a film that grossed over $100 million domestically and $300 million worldwide and won an Academy Award, during a twelve-hour streaming event. *See* Burke Decl., Exs. 2 and 4.

During the livestream, viewers watched Dizzy and other Esports athletes play the battle royale game *Apex Legends* for over twelve hours. *Id.*, Ex. 3. At the beginning of the stream, a logo that said "RIO SUITE SERIES STARRING NRG DIZZY" appeared briefly, and it also noted that the stream was "PRESENTED BY SPIDER-MAN INTO THE SPIDER-VERSE ON DIGITAL NOW & ON BLU-RAY TUESDAY[.]" *Id.*, Ex. 1. Throughout the stream, the Esports athletes provided commentary about the events that were taking place in the game. Cohenca Decl., ¶ 7. A digital on-screen graphic promoting *Into the Spider-Verse* and noting that the stream was "SPONSORED BY SONY HOME PICTURES ENTERTAINMENT" appeared throughout, and Dizzy thanked Sony for sponsoring the event toward the end of the stream. Burke Decl., Ex. 1.

In short, the livestream consisted of "written or oral statement[s]" and "other conduct in furtherance of the exercise of … the constitutional right of free speech[.]" Cal. Civ. Proc. Code § 425.16(b)(1); *see also Knight v. Montgomery Cnty., Tennessee*, 470 F. Supp. 3d 760, 767–68 (M.D. Tenn. 2020) (in deciding motion to dismiss, finding that "Plaintiffs detailed allegations involving the 'communicative medium' of livestreaming suggest (at least plausibly), for purposes of the Motion, that livestreaming qualifies as

expressive conduct.") (footnote omitted). Moreover, the livestream took place in a "public forum"—for the purposes of the anti-SLAPP law, web sites accessible to the public constitute "public forums." *E.g.*, *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1366 (2010); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 895 (2004); *see also Lacoste v. Keem*, 2020 WL 5239110, at *2 (C.D. Cal. June 23, 2020) ("YouTube, Twitter, Instagram, and Snapchat are websites accessible to the public, and are therefore public forums under the anti-SLAPP statute.") (footnote omitted).

### 3. The *Into the Spider-Verse* livestream was connected with a public issue—i.e., the home media release of that popular and successful film.

"The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include ... private conduct that impacts a broad segment of society." *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 479 (2000). "A statement or other conduct is … 'in connection with a public issue or an issue of public interest' if the statement or conduct concerns a topic of widespread public interest and contributes in some manner to a public discussion of the topic." *Hall v. Time Warner, Inc.*, 153 Cal. App. 4th 1337, 1347 (2007). An issue of public interest is "any issue in which the public is interested." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 903–04 (9th Cir. 2010) (birthday card was in connection with a public issue or an issue of public interest); *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 807 (2002) (discussion among talk radio hosts about television program was connected with an issue of public interest).

As mentioned previously, the film *Spider-Man: Into the Spider-Verse* grossed over $100 million domestically, $300 million worldwide, and won an Academy Award for Best Animated Feature Film. The livestream garnered over 400,000 viewers and Dizzy's recap video was viewed over 371,000 times. Accordingly, both the livestream and the film that it was intended to promote were clearly issues in which the public was interested.[3]

---

[3] FIV's own allegations support the conclusion that the public was interested in the livestream, as it alleges that "FIV began receiving calls from people who heard or read

The two-part analysis clarified by the California Supreme Court in *FilmOn.com Inc. v. DoubleVerify Inc.* does not change this conclusion: "First, we ask what "public issue or [ ] issue of public interest" the speech in question implicates—a question we answer by looking to the content of the speech. Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." 7 Cal. 5th 133, 149–50 (2019) (citation omitted). In an unpublished decision, the California Court of Appeal, Second District, summarized *FilmOn* as follows:

> At issue in *FilmOn* were the confidential reports of the defendant, a for-profit business which tracked information about the Web sites on which its clients advertised. (*FilmOn*, *supra*, 7 Cal.5th at pp. 140–141.) The plaintiff alleged that the defendant had disparaged its digital distribution network by falsely classifying the plaintiff's Web sites under the categories of "'Copyright Infringement File-Sharing' and 'Adult Content.'" (*Id*. at pp. 141–142.) Even acknowledging that the general topics at issue, including "sexually explicit media content," "seem[ed] to qualify as issues of public interest" under section 425.16, subdivision (e)(4), *FilmOn* concluded that the defendant's confidential reports did not further "the public conversation on an issue of public interest." (*FilmOn*, at pp. 152–153.) It stressed that the defendant "issues its reports not to the wider public—who may well be interested in whether [the plaintiff] hosts content unsuitable for children or whether its streaming platform infringes copyright—but privately, to a coterie of paying clients. Those clients, in turn, use the information [the defendant] provides for their business purposes alone. The information never entered the public sphere, and the parties never intended it to." (*Id*. at p. 153.)

*Lab Zero, Inc. v. Cartwright*, 2023 WL 2767921, at *14 (Cal. Ct. App. Apr. 4, 2023) (unpublished).[4] Here, unlike the confidential reports in *FilmOn*, the livestream at issue

---

that "Suite Series" was being broadcast" after NRG posted a tweet announcing the livestream. *See* FAC, ¶¶ 20–21.

[4] The unpublished *Lab Zero* opinion is cited merely for its streamlined summary of *FilmOn*. Nevertheless, a federal court "may consider unpublished state decisions, even though such opinions have no precedential value." *Emps. Ins. of Wausau v. Granite State*

here was broadcast to hundreds of thousands of viewers, and accordingly furthered the public conversation about an issue of public interest.

### 4. The livestream is the only allegedly wrongful and injury-producing conduct mentioned in FIV's complaint.

In determining whether the anti-SLAPP statute applies, courts "disregard the labeling of the claim and instead examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies and whether the trial court correctly ruled on the anti-SLAPP motion. We assess the principal thrust by identifying the allegedly wrongful and injury-producing conduct that provides the foundation for the claim. If the core injury-producing conduct upon which the plaintiff's claim is premised does not rest on protected speech or petitioning activity, collateral or incidental allusions to protected activity will not trigger application of the anti-SLAPP statute. The gravamen of an action is the *allegedly wrongful and injury-producing conduct,* i.e., the *acts on which liability is based,* not the damage which flows from said conduct." *Rand Res., LLC v. City of Carson*, 247 Cal. App. 4th 1080, 1090–91 (2016) (cleaned up), *aff'd in part, rev'd in part,* 6 Cal. 5th 610 (2019).

While FIV purports to plead causes of action for common law trademark infringement and unfair competition, the only wrongful and injury-producing conduct alleged in the FAC is the airing of the *Into the Spider-Verse* livestream. *See generally* FAC, ¶¶ 20–24. Since the livestream itself was expressive conduct in furtherance of the right of free speech, FIV's claims are susceptible to being stricken under California's anti-SLAPP statute. *See, e.g.*, *Ingels v. Westwood One Broad. Servs.*, 129 Cal. App. 4th 1050, 1059, 1075 (2005) (affirming striking of claim for unfair competition under Business & Professions Code section 17200).

///

---

*Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); *see also Am. Zurich Ins. Co. v. Country Villa Serv. Corp.*, 2015 WL 4163008, at *4 (C.D. Cal. July 9, 2015) ("When no published California opinion controls, federal courts may consider unpublished California opinions as persuasive authority.") (citing *Emps. Ins. Of Wausau*).

**5. The commercial speech exemption to the anti-SLAPP statute does not apply here since the livestream was an advertisement or promotion of a motion picture.**

Any argument that the commercial speech exemption to the anti-SLAPP statute, found in subsection (c) of section 425.17, applies should be rejected handily. That exemption states that "[s]ection 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services," and lists two conditions that must be present for the exemption to apply. Cal. Civ. Proc. Code § 425.17.

Seeing aside those conditions, subsection (d) sets forth an exception to the exemption, stating that subsection (c) does not apply to "[a]ny action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program, or an article published in a newspaper or magazine of general circulation." *Id.*

As detailed above, the advertising and promotion of the home media release of *Spider-Man: Into the Spider-Verse* permeated nearly every aspect of the livestream. The livestream was sponsored by Sony Home Pictures Entertainment, promotional graphics appeared throughout the stream, and Dizzy (the Esports athlete featured in the stream) thanked Sony and wore a Spider-Man mask during a portion of the stream. Therefore, the exception to the exemption applies, and section 425.16 can be used to strike FIV's claims.

**B. Prong Two: FIV cannot demonstrate a probability of prevailing on either of its causes of action.**

Since NRG has demonstrated the FIV's claims arise from protected activity, the burden now shifts to FIV to demonstrate a probability of prevailing on its causes of action. "To satisfy this prong, the plaintiff must state and substantiate a legally sufficient claim. Put another way, the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Jarrow Formulas, Inc. v.*

*LaMarche*, 31 Cal. 4th 728, 741 (2003) (cleaned up). Moreover, the plaintiff must demonstrate that its claims have merit based not on speculation or the mere allegations of the pleadings, but with "competent and admissible evidence." *Tuchscher Dev. Enterprises, Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1236 (2003) (internal citations omitted). Evidence that would not be admissible at trial, such as an "averment on information and belief, cannot show a probability of prevailing on the claim." *Id*.

FIV will be unable to demonstrate a probability of prevailing on either its common law trademark infringement or unfair competition claims. Accordingly, these causes of action—and FIV's complaint in its entirety—should be stricken.

### 1. FIV cannot demonstrate a probability of prevailing on its common law trademark infringement claim because it will not be able to prove that it used "Suite Series" as a trademark before NRG.

The Ninth Circuit has found that as a general matter, trademark claims under California state law are "substantially congruent" with federal trademark claims and thus should have the same analysis. *Grupo Gigante S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004). Therefore, the analysis of FIV's probably of success on its common law trademark infringement claim can rely on federal trademark law.

To prevail on its claim of trademark infringement, FIV must prove "(1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion, thereby infringing upon the [FIV's] rights to the mark." *Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

Regarding the first element, "[i]t is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219–20 (9th Cir. 1996), *as modified,* 97 F.3d 1460 (9th Cir. 1996).

The fatal flaw with FIV's trademark infringement claim is that it cannot demonstrate priority of use in the "SUITE SERIES" mark. The only allegation of any use whatsoever by FIV of the "SUITE SERIES" name was in the July 9, 2018 press release. *See* FAC, ¶¶ 14–15. But a press release is mere advertising: "Under the Lanham Act, a mark for goods is used in commerce when 'it is placed in any manner on the goods...*or the displays associated therewith* or on the tags or labels affixed thereto...' 15 U.S.C. § 1127 (emphasis added). It is settled that mere advertising does not constitute use of a mark in commerce under the Lanham Act." *Marketquest Grp., Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1285 (S.D. Cal. 2018).

FIV's trademark infringement claim suffers from other deficiencies—in particular, FIV has not demonstrated that it made continuous use of the "SUITE SERIES" mark after July 9, 2018 or that the descriptive mark ever obtained secondary meaning—but its inability to prove use in commerce of the "SUITE SERIES" mark defeats the claim in its entirety. Therefore, FIV will be unable to demonstrate a probability of success on its trademark infringement claim, and that cause of action should be stricken.[5]

  **2. FIV cannot demonstrate a probability of prevailing on its unfair competition claim for multiple independent reasons.**

As mentioned above, with NRG having proven that FIV's complaint arises from protected activity, it is now FIV's burden to prove with competent and admissible evidence that it has a probability of prevailing on its unfair competition cause of action. It will not be able to do so.

While FIV vaguely alludes to "other things" that may constitute unfair competition, the only acts it has alleged amount to such in its compliant are: "(a) when Sherman

---

[5] NRG joins in the arguments advanced by Defendant Caesars Entertainment, Inc., in moving to dismiss FIV's common law trademark infringement claim (*see* Dkt. No. 32-1 at 10–13), but notes that FIV's burden in responding to an anti-SLAPP motion is higher than when responding to a motion to dismiss, since "the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Jarrow Formulas*, 31 Cal. 4th at 741 (2003) (cleaned up).

pitched the [Suite Series] concept to NRG and specifically discussed entering into a business relationship by which Sherman or his entity would be compensated, NRG knew that it could not use the concept unless it entered into a contract with Sherman or his entity and provided compensation in exchange for use and, by doing so, NRG breached an implied contract with Plaintiff; (b) NRG and Lautenberg violated their duty of confidentiality with respect to the [Suite Series] concept; and (c) Defendants knew of, and intentionally interfered with, Plaintiff's relationship with MGM and others." FAC, ¶ 34.

FIV will not be able to introduce competent and admissible evidence in support of these allegations. As more fully detailed in the declaration of Brett Lautenbach, NRG did not have an implied contract with FIV or Sherman, it did not have any confidentiality obligations toward FIV or Sherman, and it did not know of nor intentionally interfere with FIV's relationship with MGM.[6] *See* Declaration of Brett Lautenbach, ¶¶ 3–6.

Unless FIV comes forward with competent, admissible evidence to the contrary, its claim for unfair competition must be stricken.

### C. NRG must be awarded its fees and costs if it prevails on this motion.

Section 425.16(c) provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c). An award of attorneys' fees and costs to a prevailing defendant who brought the motion by way of retained counsel is mandatory under the statute. *Dowling v. Zimmerman*, 85 Cal. App. 4th 1400, 1425 (2001).

NRG respectfully requests that the Court, upon grating this special motion to strike, award NRG its attorney's fees and costs in an amount to be proven in subsequent proceedings.

---

[6] Furthermore, FIV's unfair competition claim fails for all the reasons detailed by Caesars in its motion to dismiss (Dkt. No. 32-1 at 13–20), including that FIV's "unlawful" claim fails because it fails to state underlying claims for breach of implied contract, tortious breach of confidence, and tortious interference, that its "unfair" claim fails because it is not tethered to antitrust laws or other legislatively declared policy, and its "fraudulent" claim fails because it is not pleaded with specificity. NRG joins in these arguments.

## IV. CONCLUSION

For the foregoing reasons, NRG respectfully requests that the Court grant its special motion to strike, strike FIV's first amended complaint in its entirety, and award NRG its costs and fees.

DATED: October 9, 2023          PIETZ & SHAHRIARI, LLP

By /s/ Thomas P. Burke Jr.
Morgan E. Pietz
Thomas P. Burke Jr.
Attorneys for Defendant
HARD CARRY GAMING INC.
d/b/a NRG ESPORTS

17
DEFENDANT NRG ESPORTS' SPECIAL MOTION TO STRIKE